IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN JEAN-PIERRE, | ) |
| Plaintiff, | ) Civil Action No. 09-266J ) |
| v. | ) District Judge Kim R. Gibson ) Magistrate Judge Lisa Pupo Lenihan ) |
| BUREAU OF PRISONS, JOHN YOST, Warden, FCI Loretto; and MARYANN PALKO, FCI Loretto Religious Chaplain, | ) ) ) ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss or in the alternative, for Summary Judgment (ECF no. 18) should be treated solely as a motion to dismiss and should be granted as to Plaintiff's claims against the BOP and against the individual Defendants in their official capacity and denied in all other respects without prejudice to Defendants refiling a proper summary judgment motion and allowing Plaintiff to conduct relevant discovery.

**II.  REPORT**

Plaintiff, Steven Jean-Pierre, is a federal inmate who was confined at the Federal Correctional Institution at Loretto, Pennsylvania from October 4, 2007 until August 20, 2009.[1]  Plaintiff named as Defendants the following:  the Federal Bureau of Prisons (BOP); Maryann Palko, FCI-Loretto Supervisory Chaplain Sister (retired); and former Warden John Yost (retired).  His Complaint asserts liability pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403

---

1. He currently is incarcerated at the Federal Correctional Institution at Schuylkill, which is located in Minersville, Pennsylvania.

U.S. 388 (1971), alleging that during the time he was incarcerated at FCI-Loretto, Defendants discriminated against him based on his Rastafarian religious beliefs. Specifically, he alleges violations of his rights under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment because defendant Supervisory Chaplain Maryann Palko removed him from the Certified Religious Diet Program on June 3, 2008, and Defendant Warden John Yost refused to reinstate him in the program. As relief, he seeks a declaration that Defendants Palko and Yost, as well as the BOP, violated his rights, plus repayment of the filing fee and reimbursement of expenses in excess of $1,400.00 and unspecified compensatory and punitive damages.

On April 27, 2010, Defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF no. 18). In support of their motion, Defendants attached seventeen exhibits containing over eighty pages of various documents relating to Plaintiff's claim (ECF no. 19). On July 14, 2010, Defendants filed a Motion to Stay Discovery Pending Resolution of Dispositive Motion (ECF no. 25). The Court granted Defendants' Motion on July 15, 2010 and, therefore, will treat Defendants' pending motion solely as a motion to dismiss and will decide only the legal arguments raised in its motion to dismiss as Plaintiff has not had the benefit of obtaining discovery to respond to the factual issues raised in Defendants' Motion for Summary Judgment. Defendants' Motion for Summary Judgment should be denied without prejudice to refiling and allowing Plaintiff to conduct discovery relevant to his claims.

**A. Standard of Review**

As stated above, this Court will decide only the legal arguments raised in the pending Motion to Dismiss. In this regard, a complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in

Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).[2] The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the

---

2. *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

3

[pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688 ).

## B. Plaintiff's Allegations

Plaintiff alleges that on June 3, 2008, he entered the dining room at FCI Loretto to have lunch. After receiving his "religious Diet tray/Commonfare tray," he observed that part of the vegetable had dirt on it. Plaintiff then attempted to take the vegetable to his unit to have it properly cleaned before it could be consumed. Upon exiting the dining room, however, he was searched by a staff member, and the vegetable was found. As a result, Defendant Palko removed him from the Certified Religious Diet Program for thirty days. Plaintiff alleges that this was against BOP Policy 5360.09.

On or about July 5, 2008, after waiting thirty days from his removal from the program, Plaintiff requested to be reinstated to the Certified Religious Diet Program. In the request, Plaintiff explained to Chaplain Palko that his religious diet was part of his religious belief/practice, he also made it clear that this diet was the appropriate diet for him because it is the only diet to meet his religious needs. In a response dated July 6, 2008, Defendant Palko responded as follows: "please note what you stated in this 'copout' about your needs concerning the religious diet can be met by participating in the alternative diet. On the alternative diet no pork, nor pork by products, nor any meat is served. You may also eat from the hot bar and the salad bar. Your request to be on certified diet is denied." Plaintiff claims that Palko's denial was a clear attempt to alter Plaintiff's religious practices by recommending that he eat an alternative diet, which consists of unclean foods. which is an abomination of Plaintiff's religious views.

On or about July 8, 2008, plaintiff submitted a request to defendant Yost explaining how he was being denied his Religious Diet by Chaplain Palko. In particular, Plaintiff alleged that his

4

Rastafarian beliefs prohibited him from eating anything from the "main-line" because pork and pork products regularly were served on the main-line and therefore, the trays, utensils and vessels for cooking or serving are contaminated by pork or pork by-products. Defendant Yost responded on July 14, 2008, denying his request and stating that his understanding of the Rastafarian beliefs did not require an individual to participate in the Certified Process Food Line.

On July 8, 2008, Plaintiff wrote an inmate grievance, which was forwarded to Defendant Palko for resolution. On July 22, 2008, Defendant Palko responded that Plaintiff would be required to submit documentation stating that this is a religious dietary requirement for Rastafarians. Plaintiff claims that more than eighteen (18) other inmates were removed from Religious Diet the same month and all were reinstated by Palko without showing proof of documentation from an outside faith group. In addition, he claims that when he sent Palko documentation from Mr. Brian Fisher and Mr. Kenneth Perlman, she made a mockery of Plaintiff's religion instead of honoring the documentation that she herself had requested.

On July 25, 2008, Plaintiff wrote again to Defendant Yost explaining that Palko was showing prejudice against him because he was a Rastafarian and informed him that he had submitted documentation as she requested from an outside source stating that commonfare is indeed a religious dietary requirement for the Rastafarian faith. He also informed Yost that Palko had reinstated about 18 other inmates and that it had been about sixty days since he had a proper hot meal and requested he be placed back on his religious diet. Yost responded on August 17, 2008 stating that Plaintiff lacked an understanding of certified process foods and denied his request. Plaintiff claims that he filed appeals from this decision, which were denied at all levels.

### C. Defendants' Motion

1. <u>No Violation of Constitutional Right</u>

Defendants first assert that assigning Plaintiff to the Main Line did not violate his constitutional rights. In addition, Defendants claim that Plaintiff has failed to show any purposeful discrimination in support of his equal protection claim. In analyzing these claims, the Court must review the relevant facts contained in Defendants' exhibits to which Plaintiff has not had any opportunity to respond. Moreover, the allegations in his Complaint are sufficient to state a violation of his rights as protected by the First Amendment as well as the Equal Protection Clause. Accordingly, this basis for dismissal should be denied without prejudice to Defendants filing a proper motion for summary judgment to which Plaintiff will have the opportunity to conduct relevant discovery.

2.   Sovereign Immunity

Next, Defendants argue that Plaintiff's suit against the BOP and the Defendants, to the extent they are being sued in their official capacity, is barred by soveriegn immunity. In this regard, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). The federal government may waive its sovereign immunity by statute, but that waiver must be unequivocally expressed in statutory text and will not be implied. United States v. Nordic Village, Inc., 503 U.S. 30, 33-34, 37 (1992). Moreover, any waiver of sovereign immunity will be strictly construed in favor of the sovereign. Lane v. Pena, 518 U.S. 187, 192 (1996).

In Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court held that an individual injured by a federal agent's alleged violation of the United States Constitution may bring an action for damages against the agent. Notwithstanding, the Court has been reluctant to expand Bivens liability into new arenas. Consequently, in F.D.I.C. v. Meyer, 510 U.S. 471, 477-78 (1994), the Court ruled that while Bivens allows for a cause of action for

damages against federal officials for certain constitutional violations, it does not waive soveriegn immunity against federal agencies. *Accord* Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP."). Because Bivens does not waive the sovereign immunity of the federal government, the BOP is not a proper party in a Bivens action. *Accord* Banks v. Roberts, 251 Fed. App'x 774 (3d Cir. 2007).[3]

Similarly, suits against officers in their official capacities are suits against the entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Defendants are agents of the BOP. Therefore, suits against them in their official capacities are suits against the BOP. Accordingly, Plaintiff's Bivens claims only extend to the individual Bureau Defendants in their individual capacity and not the BOP itself nor to Defendants in their official capacity.

However, the discussion above does not end our inquiry. In his Response to Defendants' Motion, Plaintiff states that is asserting a claim against Defendants under the Religious Land Use and

---

3. This does not leave Plaintiffs without a cause of action as a private plaintiff may bring a civil lawsuit against the United States of America or one of its agencies, such as the Department of Justice, the parent agency of the Bureau of Prisons, under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671 et seq. In this regard, the FTCA creates a limited waiver of sovereign immunity for claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). A person who wants to bring a civil lawsuit under the Federal Tort Claims Act must first, within two years after the claim accrues, file an administrative claim with the appropriate federal agency, 28 U.S.C. § 2401(b). No civil lawsuit may be brought under the Federal Tort Claims Act "unless the claimant shall have first presented the claim to the appropriate federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." 28 U.S.C. § 2675(a). Because exhaustion of administrative remedies is required by § 2675(a), this court does not have subject matter jurisdiction over Federal Tort Claims Act cases that have not first been administratively exhausted. See Jackson v. United States, 730 F.2d 808, 809 (D.C.Cir.1984) ( "Such a[n administrative] claim is a mandatory jurisdictional prerequisite to a [Federal Tort Claims Act] suit against the United States.").

Institutionalized Persons Act of 2000, 42 U.S.C. § § 2000cc et seq. (2000) (RLUIPA). In recognition of Plaintiff's *pro se* status, the Court will liberally construe his pleadings as at least attempting to make out an RLUIPA claim.

In order to properly evaluate this claim, it is necessary to understand the legislative and jurisprudential history of this area of law. In Sherbert v. Verner, 374 U.S. 398 (1963), the Supreme Court held that a statutory or regulatory prohibition that substantially burdened a religious practice violated the Free Exercise Clause of the First Amendment unless the burden was justified by a compelling government interest. In Employment Division v. Smith, 494 U.S. 872 (1990), the Supreme Court ruled that the Sherbert test did not govern neutral, generally applicable laws, which may be applied to religious practices even when not supported by a compelling government interest. After the Smith decision, Congress enacted the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb(b)(1), for the express purpose of restoring the Sherbert Free Exercise test. *See* Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 421 (2006). Under RFRA, "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government can demonstrate that the application of the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b).

In City of Boerne v. Flores, 521 U.S. 507, 523-36 (1997), the Supreme Court held that RFRA was unconstitutional as applied to the states. In response to the Supreme Court invalidating RFRA as applied to the states, Congress enacted RLUIPA, which provides that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the burden furthers "a compelling government interest" and that it has adopted the "least restrictive means" to serve that interest. 42 U.S.C. § 2000-cc-1(a)(1)-(2).

8

Under RLUIPA, the term "government" is defined as (1) a State, county, municipality, or other government entity created under the authority of a State; (2) any branch, department, agency, instrumentality, or official of these entities; and (3) any other person acting under color of State law. 42 U.S.C. § 2000cc-5(4). The statute does not create a cause of action against the federal government or its correctional facilities. Ish Yerushalayim v. United States, 374 F.3d 89, 92 (2d Cir. 2004). Consequently, the Courts have concluded that RFRA still applies to the federal government. *See* Francis v. Mineta, 505 F.3d 266, 269 (3d Cir. 2007); Webman v. Federal Bureau of Prisons, 441 F.3d 1022 (D.C. Cir. 2006).

Thus, construing Plaintiff's claim as raised under RFRA, the question becomes, to what extent does RFRA waive the government's sovereign immunity as to claims against the BOP. It appears that the majority of courts that have wrestled with this issue have concluded that while RFRA and RLUIPA waive sovereign immunity as to suits against the government for some type of remedy, such waiver does not extend to suits for money damages. In reviewing RFRA's statutory language, the Court of Appeals for the District of Columbia found that although RFRA had clearly waived federal immunity as to some forms for relief, the statute's reference to "appropriate relief" was "not the 'sort of unequivocal waiver' " sufficient to extend that waiver of immunity to claims for monetary damages. Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 102526 (D.C. Cir. 2006) (quoting Lane, 518 U.S. at 198). The court noted that "appropriate relief" is "susceptible to more than one interpretation": it might include damages, or it might plausibly be read to include only equitable relief. *Id.* at 1026. Concluding that it "[could] not find an unambiguous waiver in language this open-ended and equivocal[,]" the court held that "RFRA does not waive the federal government's sovereign immunity for damages." *Id.* Other courts, including our court of appeals, have come to the same conclusion as to RLUIPA's identical language. *See, e.g.*, Nelson v. Miller, 570 F.3d 868

9

(7th Cir. 2009); Sossamon v. The Lone Star State of Texas, 560 F.3d 316, 331 (5th Cir. 2009); Scott v. Beard, 252 Fed. App'x 491, 492-93 (3d Cir. 2007) (holding without discussion that the Eleventh Amendment barred official capacity damages under RLUIPA); Madison v. Virginia, 474 F.3d 118, 130-33 (4th Cir. 2006) . The Court of Appeals for the Eleventh Circuit has taken a contrary view and held that RLUIPA does authorize suits for money damages against the State. *See* Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007).

This Court finds the discussion in Wegman persuasive. Therefore, I find that RFRA does not waive the government's sovereign immunity as to suits for money damages. Moreover, there simply is no basis upon which to find BOP liable under RFRA consistent with Plaintiff's allegations. Here, Plaintiff does not allege that BOP's regulations placed a substantial burden on his ability to practice his religion. Rather, he takes issue with the individual Defendants' inaction in approving him for the diet line that he requested. Thus, there is no basis upon which to hold BOP liable under RFRA even if the Court determined that money damages were available against the BOP. Consequently, Defendants' Motion to Dismiss BOP as a party to this action should be granted.[4]

3.  Qualified Immunity

The last argument raised by Defendants in their Motion to Dismiss is that the individual Defendants are entitled to qualified immunity. Qualified immunity protects government officials from liability for civil damages where their performance of discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

4. As an additional matter, the Court notes that neither RFRA nor RLUIPA support damage claims against government officials in their individual capacity. *See, e.g.*, Nelson v. Miller, 570 F.3d 868, 885-89 (7th Cir. 2009); Rendelman v. Rouse, 569 F.3d 182, 187-88 (4th Cir. 2009); Sossamon v. Texas, 560 F.3d 316, 327-29 (5th Cir. 2009); Smith v. Allen, 502 F.3d 1255, 1272-73 (11th Cir. 2007); Porter v. Beard, Civil Action No. 09-549, 2010 WL 2573878, 6 (W.D. Pa. May 12, 2010); Logan v. Lockett, Civil Action No. 07-1759, 2009 WL 799749, 4 (W.D. Pa. Mar. 25, 2009). Thus, there can be no damages liability against any of the Defendants in their individual capacities.

known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Government officials are entitled to qualified immunity unless, 1) "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right," and 2) "the right was clearly established" at the time of the violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). A right is clearly established if " '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "If officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). In making this inquiry, courts are permitted to use discretion as to which prong to apply first. Pearson v. Callahan, ___ U.S. ___, ___, 129 S.Ct. 808, 818 (2009)). Qualified immunity is a question of law, but disputed issues of material fact will preclude summary judgment on qualified immunity. Id.

Again, Plaintiff has not had any opportunity to conduct discovery on this issue. Consequently, Defendants' Motion to Dismiss on this basis should be denied without prejudice to their filing a proper motion for summary judgment and allowing Plaintiff to conduct appropriate discovery.

### III.   CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Dismiss or in the alternative, for Summary Judgment (ECF no. 18) should be treated solely as a motion to dismiss and should be granted as to Plaintiff's claims against the BOP and against the individual Defendants in their official capacity and denied in all other respects without prejudice to Defendants refiling a proper summary judgment motion and allowing Plaintiff to conduct relevant discovery.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

Dated: July 30, 2010

                                                Lisa Pupo Lenihan
                                                U.S. Magistrate Judge

cc:      Steven Jean-Pierre
          49152-053
          Schuylkill
          Federal Correctional Institution
          Inmate Mail/Parcels
          P.O. Box 759
          Minersville, Pa 17954